UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRADFORD AND MAY-LING LOVE, | § § § | No. 1:24-CV-651-DAE |
| *Plaintiffs*, | § § § | |
| vs. | § § § | |
| STATE FARM LLOYDS, | § § § | |
| *Defendant*. | § § § | |

<u>ORDER</u>

Before the Court are Defendant State Farm Lloyds's ("Defendant" or "State Farm") Motions for Partial Summary Judgment on the Issue of Roof Coverage and Plaintiffs' Extra-Contractual Claims. (Dkts. ## 25, 26.) Plaintiffs Bradford and May-Ling Love ("Plaintiffs") filed two Responses in Opposition, (Dkts. ## 27, 28), and Defendant filed two Replies in Support of its motions. (Dkts. ## 29, 30.) The Court finds these matters suitable for disposition without a hearing.

After careful consideration of the filings and relevant case law, the Court, for the following reasons, **DENIES** Defendant's Motion for Partial Summary Judgment on the Issue of Roof Coverage and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Partial Summary Judgment on Plaintiffs' Extracontractual Claims.

1

BACKGROUND

This action arises from an insurance coverage dispute over wind and hail damage to Plaintiffs Bradford and May-Ling Love's ("Plaintiffs") property located at 3000 E 17th Street, Austin, TX 78702 (the "Property"). (Dkt. # 1-1 at 6.) State Farm insured the Property under Homeowner Policy No. 53-E6-U808-6 (the "Policy"). (Dkt. # 25-1 at 48.)

On or about September 24, 2023, Plaintiffs opened a claim under the Policy for damage to their Property caused by a hailstorm, including alleged damage to the Property's metal roof system. (Dkt. # 25-1 at 4.) That hailstorm created, among other damage, slight openings in the seams between the panels of the Property's metal roof. (Dkt. # 28-4 at 16, 18.)

On October 12, 2025, State Farm inspected the Property. (Dkt. # 25-1 at 4.) After the inspection, State Farm determined that while some loss was covered, any hail damage to the metal roof was excluded from coverage pursuant to the Policy's endorsement HO-2722 Metal Roof Exclusion for Hail (the "Metal Roof Exclusion"), which states, in relevant part:

> *We* also will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by hail damage to any *metal roof* except as provided in **SECTION I – ADDITIONAL COVERAGES, Metal Roof**, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of the perils listed in 1.a. through 1.m.

2

* * * * *

The following is added to **SECTION I – ADDITIONAL COVERAGES:**

**Metal Roof.** *We* separately insure individual *metal roof* components on a covered building or structure for accidental direct physical loss directly and immediately caused by hail, but only if hail creates an opening that completely penetrates through that individual component. Coverage is limited to repairing or replacing the individual *metal roof* components with material of similar construction.

(Id. at 4–6, 102.)  Per the terms of the Metal Roof Exclusion, a "metal roof" collectively includes various explicitly listed individual components, such as panels, vents, and turbines, as well as "any other metal roofing component comprising part of the overall roof system." (Id. at 102.)  Following its determination that the alleged damage to the Property's metal roof was not a covered loss, State Farm issued an initial payment of $1,567.93.  (Dkt. # 26-1 at 020.)

In December of 2023, Plaintiffs retained King Adjusting Services LLC ("King Adjusting") to inspect the Property.  See (Dkt. # 25-1 at 114.)  Thereafter, on State Farm received King Adjusting's January 8, 2024 estimate, which totaled $48,878.13 and included a full replacement of the Property's metal roof system. (Dkt. # 26-1 at 22–31.)  After reviewing this estimate, State Farm revised its original assessment and, on January 17, 2024, issued a supplemental payment of $3,310.84 for additional repairs to the exterior of the dwelling and another structure.  (Id. at 45.)  State Farm's revised estimate did not include coverage of the damage to the metal roof.  (Id.)

3

A dispute ensued regarding the scope of coverage under the Policy.  On May 8, 2024, Plaintiffs filed suit against State Farm in the 250th Judicial District of Travis County, Texas.  (Dkt. # 1-1 at 1.)  Plaintiffs' petition alleged claims for breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Prompt Payment Act, and other violations of the Texas Insurance Code.  On June 12, 2024, State Farm removed the case to this Court on the basis of diversity jurisdiction.  (Dkt. # 1 at 2.)  On July 29, 2025, State Farm moved for partial summary judgment on Plaintiffs' roof coverage claim and extra-contractual claims.  (Dkts. ## 25, 26.)

<u>LEGAL STANDARD</u>

Summary judgment is proper only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to

4

negate the elements of the nonmovant's claim.  Id.  A party may move for summary judgment on a claim or defense or part of a claim or defense.  FED. R. CIV. P. 56(a).

Once the movant has met its burden, the burden shifts to the nonmovant to identify specific facts showing that there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the court draws all reasonable inferences in the light most favorable to the nonmovant.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).  However, "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012).

The interpretation of an unambiguous insurance policy is a question of law and is therefore appropriate for summary judgment.  See Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co., 391 F.3d 639, 641 (5th Cir. 2004). However, summary judgment is not proper if the policy is ambiguous and raises a material issue of fact.  Amoco Prod. Co. v. Texas Meridian Res. Exploration Co., Inc., 180 F.3d 664, 669 (5th Cir. 1999).

DISCUSSION

I.    The Issue of Roof Coverage

State Farm moves for partial summary judgment on Plaintiffs' breach of contract claim on the grounds that the Policy unambiguously excludes coverage

5

of the damage to the Property's metal roof.  (Dkt. # 25 at 5–6.)  Plaintiffs argue that this position rests on an objectively unreasonable interpretation of the Policy's language.  (Dkt. # 27 at 3–5.)  Alternatively, Plaintiffs argue that the Policy is ambiguous because it is susceptible to more than one reasonable interpretation.  (Id. at 5–8.)

A. Applicable Principles of Contract Interpretation

Under Texas law, insurance policies are interpreted according to the same rules that govern contract interpretation generally.  See State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010).  The primary goal is to ascertain the parties' intent through the policy's written language.  Id.  In doing so, courts must give effect to every word, clause, and sentence, and avoid constructions that render any provision within the policy inoperative.  Id.

When the interpretation of a contract is at issue, the trial court must determine whether the provisions in question are ambiguous.  Nicol v. Gonzales, 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.) (citing Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983)).  Ambiguity is a question of law for the court to decide.  Tremont LLC v. Halliburton Energy Servs., Inc., 696 F. Supp. 2d 741, 839–40 (S.D. Tex. 2010) (citing Coker, 650 S.W.2d at 393).  The court's ambiguity determination is made by looking at the contract as a whole in light of the circumstances present when the parties entered the contract and the contract's express language.  Italian

Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 333 (Tex. 2011).  When considered as a whole, a contract is ambiguous only if "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."  Coker, 650 S.W.2d at 393 (citation omitted).  "If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous."  Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996) (citing Nat'l Union, 907 S.W.2d at 520; Coker, 650 S.W.2d at 393).

"Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity."  Tex. v. Am. Tobacco Co., 463 F.3d 399, 407 (5th Cir. 2006) (citing Sun Oil Co. v. Madeley, 626 S.W.2d 726, 732–33 (Tex. 1982); Gen. Accident Ins. Co. v. Unity/Waterford–Fair Oaks, Ltd., 288 F.3d 651, 657 (5th Cir. 2002)).  Lack of clarity or inartful drafting alone will not render an agreement ambiguous.  In re D. Wilson Const. Co., 196 S.W.3d 774, 781 (Tex. 2006) (citation omitted); Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A., 121 S.W.3d 742, 746 (Tex. 2003); DeWitt Cnty. Elec. Co–op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).  A policy is also not ambiguous simply because the parties disagree over its meaning. Page, 315 S.W.3d at 527.  If an insurance contract is determined to be ambiguous after applying the pertinent rules of construction, it is construed in favor of the insured.  Kinsale

Ins. Co. v. Flyin' Diesel Performance, 99 F.4th 821, 827 (5th Cir. 2024) (applying Texas law).

B. Analysis

In the Court's view, the interpretive dilemma here concerns the meaning of the phrase "openings that completely penetrate through [an] individual metal roof component" and the scope of coverage that phrase affords under the Policy. The only openings alleged in the pleadings are separations along the seams between metal roof panels. (See Dkt. # 27 at 4, 6–8.) Applying the plain grammatical meaning of the text, State Farm argues that these separations are not covered because they do not constitute the type of "complete penetration" contemplated by the Policy. (Dkt. # 25 at 6.) State Farm further contends that the alleged openings are not *through* any "individual metal roof component," but rather occur *in between* multiple components, and therefore do not trigger coverage. (Dkt. # 30 at 4.)

Plaintiffs respond that State Farm's interpretation is objectively unreasonable because it would require hail to "puncture" the roof "ballistically," a condition that Plaintiffs claim is physically impossible. (Dkt. # 27 at 4–5.) Alternatively, Plaintiffs argue that, even if State Farm's interpretation is reasonable, the Policy is ambiguous. (Dkt. # 27 at 6.)

8

Though the Policy does not expressly define the term "individual metal roof component," the term's meaning is contemplated in the Policy's definition of "metal roof," included below:

> "***Metal roof***" collectively includes, but is not limited to the following individual components:
> a.  exterior metal shingle or metal roof panel;
> b.  metal underlayment panel;
> c.  metal roof vent;
> d.  metal turbine;
> e.  metal skylight components;
> f.  metal flashing panel or strip; and
> g.  any other metal roofing component comprising part of the overall roof system.

(Dkt. # 25-1 at 102.)

Policy language is given its plain grammatical meaning unless doing so would defeat the parties' intent.  Phila. Indem. Ins. Co. v. SSR Hospitality, Inc., 459 F. App'x 308, 313 (5th Cir. 2012) (citing DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101) (Tex. 1999)).  To determine plain meaning, courts may consult dictionary definitions and ordinary usage.  (Id.)

At first glance, the plain language of the Policy appears to support State Farm's position.  First, to "penetrate" means "to pass into or through."[1]  Under this definition, dents in metal panels that result in separations along the seams between panels would not constitute penetration, as this damage does not "pass into or

---

[1]  "Penetrate,"  Merriam-Webster,  https://www.merriam-webster.com/dictionary/penetrate (last visited March 12, 2026).

through" the metal panels themselves. The only way to trigger coverage under the plain meaning of the Policy language, then, is if a metal seam may reasonably be construed as an "individual metal roof component."

The term "individual" is commonly defined as "existing as a distinct entity,"[2] connoting something separate and independent. This understanding is consistent with the Policy's definition of "metal roof," which references individual components—such as panels, vents, and turbines—that are singular, discrete parts of the overall roofing system. See (Dkt. # 25-1 at 102.) A metal seam, by contrast, is not a separate component, but rather the junction where multiple components meet. Accordingly, the plain grammatical meaning of the Policy's language does not support coverage for the seam separations at issue here.

But the analysis cannot end here. Next, the Court must consider whether this construction of the Policy would render coverage under the endorsement illusory. Courts applying Texas law consistently refuse to construe insurance policies in ways that would render coverage under the policy illusory. See, e.g., ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co., 185 S.W.3d 440, 444 (Tex. 2005) (rejecting insurer's proposed interpretation of policy exclusion where interpretation "would render coverage under the endorsement largely illusory"). An

---

[2] "Individual," Merriam-Webster, https://www.merriam-webster.com/dictionary/individual (last visited March 12, 2026).

10

insurance policy is not illusory merely because it does not extend coverage to claims the policyholder thought it would cover, but there must be at least some potential factual scenario where coverage under the endorsement would be triggered. See Balfour Beatty Constr. v. Liberty Mut. Fire. Ins. Co., 968 F.3d 504, 515 (5th Cir. 2020) (finding that coverage was not illusory where it could be extended to numerous potential factual scenarios).

Whether there exist potential factual scenarios in which coverage under the endorsement may be triggered depends on the type of damage that hail might realistically cause. The plain grammatical meaning of the text seems to suggest that the hail must completely pass through the metal itself to trigger coverage— something Plaintiffs claim, and State Farm does not rebut, is physically impossible. (Dkt. # 27 at 4–5.)

Notably, State Farm itself is unwilling to commit to this interpretation of the Policy language. In its motion for summary judgment, State Farm seems to lean into the plain grammatical meaning of the text and defends its position by citing evidence that there were no openings that penetrated through the roof "like a bullet," "like a puncture wound," or "in the shape of a hail." (Dkt. # 25 at 7.) Yet, when confronted with the argument that interpreting the Policy to require a "ballistic puncture" would render coverage under the endorsement illusory, State Farm replied that it offers no interpretation of the Policy, that it does not contend that hail must

11

"ballistically puncture" the roof to trigger coverage, and that it is simply asking the Court to apply the text of the Policy as written. (Dkt. # 30 at 1.)  Furthermore, State Farm has not cited evidence to refute Plaintiffs' claim that it is physically impossible for hail to penetrate a metal roof in the manner suggested by the plain meaning of the Policy language, nor has it offered potential factual scenarios where coverage would be triggered under the endorsement.  It is also worth noting State Farm's own summary judgment evidence suggests a potential ambiguity regarding whether a metal seam qualifies as a "roofing component."  In the October 27 letter sent to Plaintiffs, State Farm's agent admitted there was damage to Plaintiffs' "metal roof and roofing components," but determined that such damage was "cosmetic in nature"—a condition which does not defeat coverage under the express terms of the endorsement.  See (Dkt. # 25-1 at 102); (Dkt. # 26-1 at 4.)

At the summary judgment stage, the Court must draw all reasonable inferences in the light most favorable to the nonmovant.  Wease, 915 F.3d at 992. Assuming, as Plaintiffs contend, that hail cannot physically "completely penetrate" an "individual metal component" in the manner suggested by the plain grammatical meaning of the Policy's language, a strictly literal application of the Metal Roof Exclusion would result in coverage that is effectively illusory—that is, the endorsement would never trigger coverage.  Under these circumstances, the language of the Policy cannot be given its plain grammatical meaning because doing

so would defeat the parties' intent, which is presumably to provide coverage in at least some possible factual scenario.  See Phila. Indem. Ins. Co., 459 Fed. App'x at 313 ("The language contained in the contract should be given a plain grammatical meaning unless to do so would defeat the parties' intent.").  The Court therefore concludes that the endorsement is ambiguous because its plain text cannot be given a definite legal meaning and it is susceptible to more than one reasonable interpretation, and thus, summary judgment is inappropriate on this basis.  See Amoco Prod. Co., 180 F.3d at 669.

Accordingly, State Farm's motion for partial summary judgment on the issue of roof coverage is **DENIED**.  (Dkt. # 25.)

II.     Extra-Contractual Claims

State Farm moves for summary judgment on Plaintiffs' extra-contractual claims for violations of the common law duty of good faith and fair dealing, the Texas Insurance Code, and the Texas Deceptive Trade Practices Act (the "DTPA").  Because State Farm does not seek summary judgment of Plaintiffs' claim under § 542.058 of the Prompt Payment of Claims Act, see (Dkt. # 30 at 3–4), the Court does not consider that issue at this time.[3]

---

[3] As their tenth cause of action, Plaintiffs seek statutory interest on their Prompt Payment of Claims Act claim pursuant to § 542.060 of the Texas Insurance Code. See (Dkt. # 1-1 at 15–16); TEX. INS. CODE § 542.060(c) (providing that if an insurer that is liable for a claim under an insurance policy is not in compliance with the Prompt Payment of Claims Act, the insurer is liable to pay the policy holder simple

A. Bad Faith Claims

First, the Court considers Plaintiffs' bad faith claims made pursuant to the common law duty of good faith and fair dealing, sections 541.060(a)(2)(A) and 541.060(a)(7) of the Texas Insurance Code, and the DTPA.

Insurers owe a common law duty to "deal fairly and in good faith" in processing and paying claims. Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995). An insurer breaches this duty if it denies a claim when its liability has become reasonably clear. State Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998). To prevail, a plaintiff must show that the insurer (1) had no reasonable basis for denying or delaying benefits under the policy and (2) knew or should have known that no reasonable basis existed. Stoker, 903 S.W.2d at 340. This same standard is imputed to statutory liability under chapter 541 of the Texas Insurance Code and the DTPA. Bernstien v. Safeco Ins. Co., No. 05-13-01533-CV,2015 Tex. App. LEXIS 6699, at *5 (Tex. App.—Dallas June 30, 2015) (mem. op.). Texas law renders it an unfair settlement practice for an insurance company to fail to "attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear."

---

interest on the amount of the claim). State Farm does not seek summary disposition of this claim. See (Dkts. # 26 at n.1; # 30 at 3–4.)

TEX. INS. CODE § 541.060(a)(2)(A).  And an insurer cannot deny a claim "without conducting a reasonable investigation."  Id. at § 541.060(a)(7).

Although the issues of bad faith and the reasonableness of an insurer's conduct are ordinarily questions of fact for the jury, a court may determine as a matter of law that the undisputed record establishes a reasonable basis for denial. See Dadfar v. Liberty Mut. Ins. Co., No. A-20-CV-00071-DH, 2022 U.S. Dist. LEXIS 234360, at *12–*13 (W.D. Tex. Nov. 10, 2022).  If the insurer meets its summary judgment burden, the burden shifts to the insured to present evidence sufficient to support a bad faith claim.  Id.

State Farm argues that the record shows, at most, a bona fide coverage dispute.  "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith."  Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994).  Courts must distinguish between the contract dispute and the tort inquiry, as bad faith focuses on the reasonableness of the insurer's conduct, not merely whether coverage ultimately exists.  See Nieto v. State Farm, 722 F. Supp. 3d 653, 658 (S.D. Tex. 2024).

Viewed in the light most favorable to Plaintiffs, the summary judgment record suggests more than a bona fide dispute over policy interpretation.  First, Plaintiffs contend that State Farm's explanation for the denial of coverage was unreasonable because it was grounded on an untenable interpretation of the Policy

15

language.  Specifically, Plaintiffs argue that State Farm denied coverage on the basis that a covered "opening" under the Policy requires a puncture through a metal roofing component itself, and that it is physically impossible for hail to produce such an opening.  (Dkt. 28 at 4–5.)  Assuming, as Plaintiffs contend, that such a condition is physically impossible, then coverage under the Metal Roof Exclusion is rendered effectively illusory, meaning it could never be triggered in practice.  A reasonable factfinder could infer that reliance on a policy requirement incapable of practical satisfaction supports a finding that the denial lacked a reasonable basis and that State Farm knew or should have known as much.

Next, Plaintiffs have raised a genuine issue of material fact as to whether State Farm conducted a reasonable investigation of the claim.  The summary judgment record shows that on October 12, 2023, State Farm responded to Plaintiffs' claim and sent an adjuster to inspect the property.  (Dkt. # 26-1 at 4.)  Shortly thereafter, State Farm issued an estimate reflecting $1,567.93 in covered damages. (Id. at 21.)  Plaintiffs disagreed with this valuation and retained Kings Adjusting, which concluded that additional covered damage existed, including damage warranting full roof replacement totaling 48,878.13.  (Id. at 22–31.)  State Farm reviewed the Kings Adjusting estimate and revised its own estimate to include certain additional repairs but maintained that the metal roof was not covered under the Policy.  (Id. at 32–44, 45.)  Notably, Plaintiffs point to evidence that State Farm's

16

own adjuster initially estimated a higher claim amount that was reviewed and overridden. (Dkt. # 28-3 at 30–31.)

Conflicting damages estimates, without more, show only a bona fide dispute regarding the extent of liability. Chavez v. State Farm Lloyds, 746 F. App'x 337, 342 (5th Cir. 2018), *abrogated on other grounds by* Agredano v. State Farm Lloyds, 975 F.3d 504, 506–07 (5th Cir. 2020). But Plaintiffs show more than a disagreement over valuation—they present evidence that calls into question the reasonableness of the investigation itself. See, e.g., State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997) (holding that bad faith liability may arise when an insurer's reliance on a report was unreasonable).

That State Farm's denial of coverage was supported by its experts' investigative reports does not automatically entitle it to summary judgment. An insurer's reliance on an expert is not shielded from bad faith liability when the evidence shows that the report was not objectively prepared or that reliance on it was unreasonable. Nicolau, 951 S.W.2d at 448. Here, Plaintiffs contend that State Farm's investigation proceeded under the premise that only a puncture through a metal roofing component constitutes a covered "opening"—a condition which, Plaintiffs argue, is physically impossible. (Dkt. # 28 at 4–5.) If such a condition is not realistically capable of occurring, then a reasonable factfinder could conclude

17

that the investigation was structured around a foreclosed interpretation of coverage and that reliance on reports generated under that premise was unreasonable.

Additionally, Plaintiffs point to evidence that State Farm reduced its own adjuster's initial draft estimate before issuing its final position. (Dkt. # 28-3 at 30–31.) When viewed in the light most favorable to Plaintiffs, that evidence, combined with State Farm's potentially untenable understanding of the Metal Roof Exclusion, raises a fact issue as to whether the investigation or resulting report was outcome-oriented. See Nicolau, 951 S.W.2d at 458 (explaining that an insurer fails to reasonably investigate when the investigation is conducted as a pretext for denial or is outcome-oriented).

For the above reasons, the Court finds that Plaintiffs have raised a genuine issue of material fact regarding State Farm's alleged bad faith in the investigation and settlement of their claim. Accordingly, the Court **DENIES** State Farm's motion for partial summary judgment on Plaintiffs' bad faith claims under the common law, the Insurance Code, and the DTPA.

B. Misrepresentation Claims

Next, the Court considers Plaintiffs' claims for alleged misrepresentations brought under the DTPA and sections 541.051, 541.060, 541.061, and 542.056 of the Texas Insurance Code. State Farm moves for summary judgment on these claims, contending that it made no actionable misrepresentations and that

18

any alleged statements occurred post-loss, such that Plaintiffs are foreclosed from recovery because they cannot prove causation and reliance.

In their Original Petition, Plaintiffs identify the following statements as actionable misrepresentations under various provisions of the Texas Insurance Code and the DTPA: (1) State Farm's October 27th estimate concluding that the hail damage to Plaintiffs' roof did not completely penetrate through a metal roofing component and therefore did not trigger coverage; (2) State Farm's January 19th estimate providing additional coverage while continuing to deny coverage for the roof; and (3) State Farm's March 7th letter advising Plaintiffs that coverage was denied pursuant to the Metal Roof Exclusion.  (Dkt. # 1-1 at 9–10.)

"An affirmative misrepresentation of insurance coverage may give rise to claims under the DTPA and the Texas Insurance Code." Jajou v. Safeco Ins. Co. of Ind., No. SA-20-CV-00839-XR, 2022 U.S. Dist. LEXIS 12924, at *21 (W.D. Tex. Jan. 24, 2022). To proceed on such claims, an insured must "point to an express misrepresentation or an omission relating to an insurance policy that the insurer allegedly made." Id.  (quoting Ramirez v. GEICO, 548 S.W.3d 761, 775 (Tex. App.—El Paso 2018, pet. denied)).

To establish a violation of § 541.060(a)(1), a plaintiff must show that the insurer misrepresented (1) a material fact or policy provision that (2) relates to the coverage at issue.  Dadfar, 2022 U.S. Dist. LEXIS 234360 at *9 (quoting

Olschwanger v. State Farm Lloyds, No. 4:19-CV-00933-SDJ-CAN, 2021 U.S. Dist. LEXIS 163786, at *5 (E.D. Tex. July 30, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 163238 (E.D. Tex. Aug. 30, 2021)).  Additionally, "post-loss misrepresentations do not give rise to Insurance Code liability where the insured takes no action based on the representation to its injury or damage."  Id. at *11; see also Nunn v. State Farm Mut. Auto. Ins. Co., 729 F. Supp. 2d 801, 813 (N.D. Tex. 2010) (noting that recovery under §§ 541.051 and 541.061 requires proof that the alleged misrepresentation was a producing cause of the plaintiff's damages). Accordingly, to avoid summary judgment, Plaintiffs must raise "a fact issue of an 'unbroken causal connection' between the misrepresentation . . . and [their] injuries." See Doe v. Boys Clubs of Greater Ball., Inc., 907 S.W.2d 472, 481 (Tex. 1995)). Absent evidence of such reliance, any alleged misrepresentations are not actionable under either the Texas Insurance Code or the DTPA.  See Weyerts v. S. Farm Bureau Life Ins. Co., No. P:19-CV-19-DC, 2020 U.S. Dist. LEXIS 204501, at *12 (W.D. Tex. Sept. 14, 2020); see also Jajou, 2022 U.S. Dist. LEXIS 12924, at *24 (noting that the DTPA allows consumers to bring private actions when they rely to their detriment on a misleading representation and such reliance is a producing cause of economic damages).

State Farm argues that Plaintiffs have failed to identify any actionable misrepresentation.  See (Dkt. # 26 at 8–11.) The Court agrees.  "[W]here the alleged

20

misrepresentations pertain to [the insurer's] failure to comply with the terms of the policy as Plaintiff interprets it, 'such a failure is properly characterized as a breach of contract, not a misrepresentation.'" Frias v. Allstate Vehicle & Prop. Ins. Co., No. SA-25-CV-00395-OLG, 2025 U.S. Dist. LEXIS 211543, at *4 (W.D. Tex. Oct. 24, 2025) (quoting Partain v. Mid-Continent Speciality Ins. Servs., Inc., 838 F. Supp. 2d 547, 563 (S.D. Tex. 2012), aff'd sub nom., Graper v. Mid-Continent Cas. Co., 756 F.3d 388 (5th Cir. 2014)). The alleged misrepresentations in the October 27th, January 19th, and March 7th correspondence pertain to State Farm's perceived failure to comply with the terms of the Policy as Plaintiffs interpret it. Such statements are not actionable misrepresentations; rather, they concern the parties' competing interpretations of the Policy and are better addressed under Plaintiffs' breach of contract claim. See Effinger v. Cambridge Integrated Servs. Grp., 478 F. App'x 804, 807 (5th Cir. 2011) (holding that a policy's promise to promptly compensate does not become a misrepresentation merely because an insurance carrier disputes whether an injury is compensable and delays payment).

Moreover, even assuming that the challenged statements did qualify as misrepresentations, Plaintiffs have produced no evidence of reliance or producing cause.[4] It is well established law that post-loss statements regarding coverage do not

---

[4] "A producing cause is 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any.'" Nast v.

21

give rise to liability under either the Texas Insurance Code or the DTPA absent proof that the insured relied on the alleged misrepresentation to their detriment. See Frias, 2025 U.S. Dist. LEXIS 211543, at *4 (explaining that alleged misrepresentations made by an insurer regarding coverage under the policy are not actionable absent evidence of reliance); Nunn, 729 F. Supp. 2d at 813 (explaining that a claim under the Texas Insurance Code for misrepresentation requires proof that the alleged misrepresentation caused the plaintiff's damages); Carper v. State Farm Lloyds, No. 3-01-CV-1979-M, 2002 U.S. Dist. LEXIS 17485, at *31 (N.D. Tex. Sept. 13, 2002) (granting summary judgment as to plaintiffs' misrepresentation claims where there was no evidence of reliance and causation); Davis v. State Farm Lloyds, No. 3:15-CV-0596-B, 2015 U.S. Dist. LEXIS 95086, at *13 (N.D. Tex. July 21, 2015) (noting that DTPA liability is imposed only when "the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages.") (quoting Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999)). Plaintiffs' alleged injury is the underpayment of policy benefits. The challenged communications occurred after that claimed loss, such that Plaintiffs could not have relied on the alleged misrepresentations to their detriment.

---

State Farm Fire & Cas. Co., 82 S.W.3d 114, 121 (Tex. App.—San Antonio 2002, no pet.) (quoting Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995)).

22

For the above reasons, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact regarding State Farm's alleged misrepresentations. Accordingly, the Court **GRANTS** State Farm's motion for partial summary judgment on Plaintiffs' misrepresentation claims.

C. Breach of an Express or Implied Warranty Under the DTPA

Next, Plaintiffs allege in their Petition that State Farm breached an express or implied warranty that hail damage would be covered under the Policy, in violation of section 17.50(a)(2) of the DTPA. (Dkt. # 1-1 at 19.) State Farm does not expressly address this claim in its Motion for Summary Judgment. Instead, it subsumes the allegation within Plaintiffs' broader misrepresentation claims, see (Dkt. # 26 at 9), which are governed by a different legal standard than breach of warranty claims. See, e.g., Nast, 82 S.W.3d at 121–23 (analyzing misrepresentation and breach of implied warranty claims separately).

Accordingly, the Court finds that State Farm failed to meaningfully address the breach of warranty claim and did not identify an absence of summary judgment evidence demonstrating that no genuine issue of material fact exists at this stage of the litigation. See Celotex Corp., 477 U.S. at 323 (holding that the summary judgment movant bears the initial burden of showing the absence of a genuine issue of material fact). Moreover, the Court's determination that a genuine issue of material fact precludes summary judgment on Plaintiffs' breach of contract claim

23

further counsels against granting summary judgment on the breach of express warranty claim. See Medical City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 60 (Tex. 2008) (explaining that although breach of express warranty is distinct from breach of contract, both are contractual in nature and analyzed similarly).

Because the parties have not sufficiently briefed the issue to the extent that the Court may determine as a matter of law that no cause of action exists for breach of warranty under the DTPA, it would be improper to grant summary judgment on Plaintiffs' breach of warranty claim at this stage of the litigation. Accordingly, State Farm's motion for partial summary judgment on Plaintiffs' warranty claim under section 17.50(a)(2) of the DTPA is **DENIED**.

D. Intentional Violation Claims Under the DTPA

Finally, the Court considers Plaintiffs' claims that they are entitled to recovery of exemplary damages on the basis that State Farm's alleged DTPA violations were committed "intentionally." See (Dkt. # 1-1 at 12–15.) A prevailing consumer may recover additional damages under the DTPA if the factfinder determines that the defendant acted "knowingly" or "intentionally." TEX. BUS. & COM. CODE § 17.50(b)(1). Under the DTPA:

> "Intentionally" means ***actual awareness*** of the falsity, deception, or unfairness of the act or practice . . . giving rise to the consumer's claim, coupled with the ***specific intent that the consumer act in detrimental reliance*** on the falsity or deception or in detrimental ignorance of the unfairness. Intention may be inferred from objective manifestations that indicate that the person acted intentionally or from facts showing that a

24

defendant acted with flagrant disregard of prudent and fair business practices to the extent that the defendant should be treated as having acted intentionally.

Id. at § 17.45(13) (emphasis added).

Plaintiffs have produced no evidence creating a genuine issue of material fact on this heightened standard. In their Response, the only evidence cited in support of their allegations of intentional conduct is that State Farm adjuster Angela Henderson initially sought authority to issue a payment of $7,200.77 that was later reviewed and reduced. (Dkt. # 28-3 at 30–31.) At most, this evidence raises a fact issue on the reasonableness of State Farm's investigation of the claim. It does not, without more, demonstrate actual awareness of falsity or deception, nor does it show a specific intent that Plaintiffs act in detrimental reliance on the alleged falsity or deception or in detrimental ignorance of the unfairness.

For the reasons above, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact on the issue of State Farm's alleged intentional violations of the DTPA. Accordingly, the Court **GRANTS** State Farm's motion for partial summary judgment on Plaintiffs' intentional violation claims.

CONCLUSION

For the reasons stated, the Court **DENIES** State Farm's Partial Motion for Summary Judgment on the Issue of Roof Coverage (Dkt. # 25) and **DENIES IN PART AND GRANTS IN PART** State Farm's Motion for Summary Judgment on

25

Plaintiffs' Extracontractual Claims (Dkt. # 26). Specifically, Defendant's Motion for Summary Judgment on Extracontractual Claims is **GRANTED** as to Plaintiffs' claims under sections 541.051, 541.060(a)(1), 541.060(a)(3), 541.061, and 542.056 of the Texas Insurance Code and sections 17.46 and 17.50(b)(1) of the Texas Deceptive Trade Practices Act, and such claims are **DISMISSED**. Defendant's Motion is **DENIED** in all remaining aspects, leaving Plaintiff's claims for bad faith under the common law, Insurance Code, and DTPA, warranty claim under section 17.50(a)(2) of the DTPA, and any claims on which State Farm did not seek summary judgment surviving. Trial in this case will be set by separate order.

    **IT IS SO ORDERED.**

    **DATED**: Austin, Texas, March 12, 2026.

                                    David Alan Ezra
                                    Senior United States District Judge